KORSINSKY & KLEIN, LLP
2926 Avenue L
Brooklyn, New York 11210
Telephone:     (212) 495-8133
Facsimile:     (212) 419-3893
*Attorneys for Plaintiff Marguerite Gabriel*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MARGUERITE GABRIEL, | ) | No. 1:19-cv-6738-EK-VMS |
| | ) | |
| Plaintiff, | ) | |
| | ) | Oral Argument Requested |
| v. | ) | |
| | ) | |
| NEWREZ LLC f/k/a NEW PENN FINANCIAL LLC | ) | |
| d/b/a SHELLPOINT MORTGAGE SERVICING, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF
## MARGUERITE GABRIEL'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ........................................................................................ i

**TABLE OF AUTHORITIES** ................................................................................ ii

**PRELIMINARY STATEMENT** ........................................................................... 1

**STATEMENT OF FACTS** .................................................................................... 2

**ARGUMENT** ......................................................................................................... 6

   I.   GABRIEL IS A "CONSUMER" PURSUANT TO 15 U.S.C. § 1692a(3) ......................... 7

   II.   SHELLPOINT IS A "DEBT COLLECTOR" PURSUANT TO THE FDCPA .............. 7

   III.   SHELLPOINT VIOLATED THE FDCPA IN ITS COLLECTIONS ACTIVITIES DIRECTED AT GABRIEL ................................................................ 8

      a.  Shellpoint Threatened to Initiate or Resume Litigation ................................................. 9

      b.  The Litigation Shellpoint Threatened to Initiate or Resume was Time-Barred ........ 10

      c.  Shellpoint Violated the FDCPA by Communicating with Gabriel About Rosemond's Debts ....................................................................... 13

   IV.   DEFENDANTS' AFFIRMATIVE DEFENSES ARE MERITLESS ........................... 17

   V.   GABRIEL IS ENTITLED TO REASONABLE ATTORNEY'S FEES AND STATUTORY DAMAGES .......................................................... 18

**CONCLUSION** ....................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ............................................................ 6

Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP, 875 F.3d 128, 135 (2d Cir. 2018) ............... 7

Austin v. Great Lakes Collection Bureau, 834 F. Supp. 557, 559 (D. Conn. 1993) ..................... 13

Baker v. G.C. Services Corp., 677 F.2d 775, 777 (9th Cir.1982) ................................................... 7

Banakus v. United Aircraft Corp., 290 F. Supp. 259, 260 (S.D.N.Y. Sept. 23, 1968) ................ 11

Bank of N.Y. Mellon v Dieudonne, 171 A.D.3d 34, 37 (N.Y. App Div. 2d Dept 2019) ............. 10

Barasch v. Estate Info. Servs., LLC, 2009 WL 2900261, *10 (E.D.N.Y. Sept. 2, 2009) ............. 13

Beattie v. D.M. Collections, Inc., 764 F. Supp. 925, 926 (D.Del. 1991) ...................................... 16

Carrick v. Central General Hospital, 51 N.Y.2d 242, 245 (N.Y. 1980) ...................................... 11

Ceraldi v. Strumpf, 3:17-CV-1628 (JCH), 2020 U.S. Dist. LEXIS 89257, *11 (D.Conn. May 19,
    2020) ........................................................................................................................................ 12

Datiz v. Int'l Recovery Assocs., 2020 WL 5899881, *16-17 (E.D.N.Y. Mar. 12, 2020) ............. 19

Dewees v. Legal Servicing, LLC, 506 F. Supp. 2d 128 (E.D.N.Y. June 29, 2007) ..................... 10

Diaz v. D.L. Recovery Corp., 486 F. Supp. 2d 474, 477 (E.D.Pa. April 23, 2007) .................... 13

Emanuel v. Am. Credit Exch., 870 F.2d 805, 809 (2d Cir. 1989) ......................................... 18, 19

Emanuel v. American Credit Exchange, 870 F.2d 805, 809 (2d Cir 1989) ................................. 16

Fedotov v. Peter T. Roach & Assocs., P.C., 354 F. Supp. 2d 471, 477 (S.D.N.Y. 2005) ............. 7

Gabrielle v. Law Office of Martha Croog, 2012 WL 460264, at *4 (D. Conn. Feb. 9, 2012), aff'd,
    503 F. App'x 89 (2d Cir. 2012) ................................................................................................. 8

Gervais v. Riddle & Assocs., P.C., 479 F. Supp. 2d 270, 279 (D. Conn. 2007) ......................... 12

Huebner v. Midland Credit Mgmt., 14 Civ. 6046 (BMC), 2016 U.S. Dist. LEXIS 73211, *30
    (E.D.N.Y. June 3, 2016) ........................................................................................................... 14

Jacobson v. Healthcare Fin. Servs., 516 F.3d 85, 95 n. 8 (2d Cir. 2008) ................................... 18

Johnson-Gellineau v. Steine & Assocs., P.C., 2019 WL 2647598, *30 (S.D.N.Y. June 27, 2019) 7

Larsen v. JBC Legal Group, P.C., 533 F. Supp. 2d 290, 303 (E.D.N.Y. Feb 12, 2008) ............... 9

LN Mgmt., LLC v. JPMorgan Chase Bank, N.A., 957 F.3d 943, 954 (9th Cir. 2020) ............... 11

Marte v. Graber, 58 A.D.3d 1, 3 [N.Y. App. Div. 1st Dept 2008] .............................................. 11

Matter of Foreclosure of Tax Liens, 165 A.D.3d 1112, 1118 (N.Y. App Div. 2d Dept 2018) .... 11

MSF Holding Ltd. v. Fiduciary Trust Co. Int'l, 435 F. Supp. 2d 285, 305 (S.D.N.Y. 2006) ......... 6

Nicaisse v. Mel S. Harris & Assocs., LLC, 2015 WL 5561296, at *2 (E.D.N.Y. Sept. 19, 2015)
    ................................................................................................................................................. 18

Okyere v. Palisades Collection, LLC, 961 F. Supp. 2d 508, 514 (S.D.N.Y. 2013) ...................... 6

Powers v. Professional Credit Servs., Inc., 107 F. Supp. 2d 166, 169 (N.D.N.Y. Aug. 1, 2000) 14

Rani v. Drobenare, 1:19-CV-05186 (MKB) (ST), 2020 U.S. Dist. LEXIS 151327, *24 (E.D.N.Y.
    Aug. 19, 2020) ......................................................................................................................... 19

Savino v. Computer Credit, Inc., 164 F.3d 81, 87 (2d Cir. 1998) ............................................... 18

Schuh v. Druckman & Sinel L.L.P., 751 F. Supp. 2d 542, 548 (S.D.N.Y. 2010) ......................... 6

Sibersky v. Goldstein, 155 F. App'x 10, 11 (2d Cir. 2005) ......................................................... 13

Sorel v. Capital One Servs., LLC, 2012 WL 3596487, *22 (D.Conn. Aug 20, 2012) ................ 10

Sterling v. Am. Credit & Collections, LLC, 2012 WL 3553757, *10 (D.Colo. 2012) ............... 16

Tardi-Osterhoudt v. McCabe, Weisberg & Conway LLC, 2019 WL 4242410, *32 (N.D.N.Y. Sept. 6, 2019) ........................................................................................................ 12

Teng v. Metropolitan Retail Recovery, 851 F. Supp. 61, 70 (E.D.N.Y.1994) ............................ 19

Thomas v. Consumer Adjustment Co., 579 F. Supp. 2d 1290, 1299 (E.D.Mo. Sept. 30, 2008).. 13

U.S. Underwriters Ins. Co. v. Zeugma Corp., No. 97-Civ-8031, 1998 WL 633679, at *2 (S.D.N.Y. Sept. 15, 1998) ............................................................................................ 6

Wilner v. OSI Collection Servs., Inc., 201 F.R.D. 321, 323 (S.D.N.Y. 2001) ............................ 19

## Statutes

15 U.S.C. § 1692(e) .............................................................................................................. 1, 12

15 U.S.C. § 1692, et seq ............................................................................................................. 1

15 U.S.C. § 1692a(3) .................................................................................................................. 7

15 U.S.C. § 1692a(5) .................................................................................................................. 7

15 U.S.C. § 1692c(d) ........................................................................................................... 14, 20

15 U.S.C. § 1692k(a) ................................................................................................................. 13

15 U.S.C. § 1692k(a)(3) ............................................................................................................ 18

15 U.S.C. § 1692k(c) ................................................................................................................. 21

23 CRR-NY 1.3 ......................................................................................................................... 10

23 CRR-NY 1.3(a) ............................................................................................................... 10, 12

23 CRR-NY 1.3(b) ............................................................................................................... 10, 12

## Rules

Fed. R. Civ. P. 56(c) .................................................................................................................. 6

NY CPLR § 213(4) .................................................................................................................... 10

**PRELIMINARY STATEMENT**

Plaintiff Marguerite Gabriel ("Gabriel") seeks summary judgment on her sole cause of action against Defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") for the various violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA").

The FDCPA's stated purpose is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The Plaintiff is a single, unsophisticated, elderly woman and was a victim of precisely the abusive debt collection practices that the FDCPA was enacted to eliminate, by the Defendant herein.

Gabriel alleges, and the uncontroverted evidence demonstrates, that defendant Shellpoint, in violation of the FDPCA and relevant New York State law, pursued her for payment of a debt for which she was not liable and which was uncollectable by operation of the New York statute of limitations. Shellpoint further communicated with Gabriel about the debts of Anthony R. Rosemond ("Rosemond"), the decedent, even though Gabriel was not one of the enumerated categories of persons with whom a debt collector may communicate pursuant to the FDCPA, and despite Shellpoint having constructive and actual notice of this fact.  Thereafter, while continuing to violate the FDCPA, Defendant Shellpoint also had Plaintiff Gabriel execute an Assumption Agreement, thereby improperly reviving a unenforceable and uncollectible debt.  While Shellpoint has alleged that the initial contact between Gabriel and Shellpoint was initiated by Gabriel, this fact, operating alone, is insufficient to establish any affirmative defenses which would relieve Shellpoint of its liability under FDCPA, especially because it continued to violate the FDCPA irrespective of such initial communication and sent her an assumption agreement to take upon a debt she was never obligated to do.

Shellpoint's discovery responses and the deposition of the former Shellpoint employee who oversaw the mortgage loan file in question confirmed that: 1) Shellpoint did not conduct any review of the mortgage loan to determine if it might have been uncollectable due to the operation of the statute of limitations, in contravention of New York law; 2) Shellpoint had no internal processes in place to conduct such a review; 3) by Shellpoint's own policies, Gabriel did not establish that she was the executor of Rosemond's estate when Shellpoint began communicating with her concerning the mortgage; 4) Shellpoint had actual knowledge that other persons had been appointed as administrators of Rosemond's estate, but nonetheless Shellpoint continued contacting Gabriel in an attempt to convince her to assume the uncollectable loan; 5) Gabriel was thereby damaged by assuming the mortgage loan in an amount to be proven but, as of the most recent calculation provided by Shellpoint, not less than $67,305.73, this sum being the full "Accelerated Balance" of the mortgage including principal, interest, penalties, and fees.

Accordingly, but for defendant's FDCPA violations, Gabriel would not have had the improper communications with Shellpoint and would not have signed the assumption agreement nor made installment payments on the underlying uncollectable debt. Gabriel was also actually damaged by incurring attorneys' fees to defend the underlying foreclosure lawsuit as well as such fees for prosecuting the instant matter.

## STATEMENT OF FACTS

The facts necessary for this Court to decide this case on summary judgment are limited and are either undisputed or are uncontroverted by the evidence adduced in the course of discovery.

Marguerite Gabriel is a natural person who resides in Kings County, New York. She resides in the property known as and located at 473 East 56th Street, Brooklyn, New York 11203, Block

4767 Lot 45 (the "Property"). The Property was owned by Rosemond prior to his death. On April 9, 1996, Rosemond borrowed $32,000.00 from Champion Mortgage Co., Inc. by executing a Balloon Note (the "Note") secured by a mortgage on the Property (the "Mortgage"). Declaration of Adam M. Birnbaum ("Birnbaum Aff.") Exhibit A. The Mortgage Note stated on its face that the loan was to be paid in full on April 15, 2011. Id.

On May 29, 2000, Rosemond died. Birnbaum Aff. Exhibit B. On August 12, 2010, HHLD Finance Realty Corp of NY, a predecessor-in-interest of the current holder of the Note, Birnbaum Aff. Exhibit D, purported to commence a foreclosure proceeding in the New York State Supreme Court, Kings County, against Rosemond personally, and not against his estate or his heirs, concerning the Mortgage, captioned <u>HHLD Finance Realty Corp of NY v. Anthony R. Rosemond et al</u>, Kings County Supreme Court Index No. 20050/2010 (the "Foreclosure Action"). Birnbaum Aff. Exhibit C. This was more than ten years after Rosemond passed away, and contrary to New York law which does not allow the "dead to be sued."

On or about June 18, 2018, Shellpoint became the new loan servicer for the Mortgage. Birnbaum Aff. Exhibit E. Shortly thereafter, Shellpoint directed correspondence dated June 21, 2018, to the Property addressed to "Estate of A Rosemond." Birnbaum Aff. Exhibit M. The language in the correspondence included as statement that "we can determine if you qualify for temporary or long-term relief, including mortgage options that *may allow you to stay in your home or leave your home while avoiding foreclosure*." [emphasis added] Id. On July 6, 2018, Shellpoint received a telephone call from Gabriel inquiring into the status of the Mortgage. Birnbaum Aff. Exhibit F at 37. The person at Shellpoint who took the call, a "J. Boyd," determined that Gabriel was not authorized to discuss the loan because there were "no auth or executorship docs on file." Id. at 38. Gabriel's attorney at the time, Sara Bovill, emailed a scanned photocopy of Rosemond's

3

Last Will and Testament, Rosemond's death certificate, and a "Third Party Authorization" to a Shellpoint email address to establish that Gabriel was "authorized" to communicate with Shellpoint about the Mortgage. Birnbaum Aff. Exhibit R. Pursuant to Shellpoint's own policies and practices, both a will and a document reflecting that the Will had been accepted by a court and that an executor had been appointed was required before a person could be deemed "authorized." Birnbaum Aff. Exhibit L at 40 – 41. By the admission of a former Shellpoint employee, no such court document was ever submitted for Gabriel. Id. at 52. Nevertheless, Shellpoint continued to correspond and speak to Gabriel.

Despite the fact that Gabriel had not given Shellpoint any court-issued documents indicating that the will had been accepted for probate or that Gabriel had been appointed executor of Rosemond's estate, Shellpoint deemed Gabriel to be an "authorized" person and began speaking with her about the loan. In fact, Shellpoint's own records indicated that it was aware that a petition for the administration of Rosemond's estate was pending in Kings County Surrogate's Court, Birnbaum Aff. Exhibit F at 29.

On November 12, 2018, Shellpoint received information that "the court has appointed Anthony and Sonja as co-administrators" of Rosemond's estate. Birnbaum Aff. Exhibit F at 24. After receiving this information, Shellpoint continued to communicate with Gabriel about the Mortgage, both by postal mail and by telephone. Id. at 19 – 22. Shellpoint apparently never took any steps to contact the newly-appointed administrators of Rosemond's estate, continuing only to send correspondence to the Property. April 13, 2020 Interrogatory Responses at ¶ 7. Shellpoint had no internal controls or procedures for discontinuing contact with a person previously believed to be authorized to discuss the debts of a deceased borrower in the event that a new representative was appointed for the debtor's estate. Birnbaum Aff. Exhibit L at 31.

Included in the documents Shellpoint sent to Gabriel was an assumption agreement by which Gabriel would assume responsibility for the Mortgage. Id. at 21. This assumption agreement (the "Assumption") was prepared by Shellpoint with no input from Gabriel. Birnbaum Aff. Exhibit P at ¶ 14.

Shellpoint continued communicating with Gabriel about a proposed assumption and modification of the Mortgage, including calls from Gabriel to Shellpoint on December 3, 2018 and calls from Shellpoint to Gabriel on December 10, 2018, Birnbaum Aff. Exhibit F at 20 – 22. Despite the fact that Shellpoint was already aware that administrators had been appointed for Rosemond's estate by this time, Shellpoint continued communicating with Gabriel about the loan, including encouraging her to sign the assumption agreement so Gabriel could "make sure that [Gabriel could] go ahead and keep [her] property," e.g., stop the pending foreclosure. Birnbaum Aff. Exhibit L at 60 – 61.

Gabriel finally signed the assumption agreement prepared by Shellpoint on December 14, 2018. Birnbaum Aff. Exhibit J; Exhibit L at 19. Shellpoint received the executed assumption agreement on or about December 18, 2018, Id., and continued to communicate with her by telephone on December 18, 2018 concerning additional personal details Shellpoint required to complete the assumption agreement. Birnbaum Aff. Exhibit L at 18.

On November 29, 2019, Gabriel commenced the instant action by filing a Complaint, Docket No. 1.

On December 3, 2019, Gabriel appeared in the Foreclosure Action by undersigned counsel and cross-moved for the matter to be dismissed, as it was improperly commenced against a person already deceased at the time of purported commencement. Birnbaum Aff. Exhibit S. The Cross-

Motion was fully briefed and submitted on February 24, 2020, and (as of the date of this writing) no decision has yet issued, nor has any judgment of foreclosure entered. Importantly, Gabriel is named in the Foreclosure Action (as a "Jane Doe") only as an occupant of the Property, and not as a borrower, executor, legatee, fiduciary, or in any other capacity. Birnbaum Aff. Exhibit C.

## ARGUMENT

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Whether a fact is "material" is determined by the substantive law defining the claims. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Where parties on a summary judgment motion do not dispute a dispositive material fact, and merely disagree as to the consequence of that undisputed fact under the law, a question of law is presented for the court's interpretation and the court could not be on firmer ground in granting summary judgment as a matter of law." MSF Holding Ltd. v. Fiduciary Trust Co. Int'l, 435 F. Supp. 2d 285, 305 (S.D.N.Y. 2006). *See also* U.S. Underwriters Ins. Co. v. Zeugma Corp., No. 97-Civ-8031, 1998 WL 633679, at *2 (S.D.N.Y. Sept. 15, 1998) ("Summary judgment is appropriate where all facts are undisputed and only questions of law remain to be decided.")

"To establish a violation under the FDCPA, (1) the plaintiff must be a "consumer" who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a "debt collector," and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements." Okyere v. Palisades Collection, LLC, 961 F. Supp. 2d 508, 514 (S.D.N.Y. 2013), *quoting* Schuh v. Druckman & Sinel L.L.P., 751 F. Supp. 2d 542, 548 (S.D.N.Y. 2010).

"A representation is 'deceptive' under section 1692e if it is 'open to more than one reasonable interpretation, at least one of which is inaccurate.:" Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP, 875 F.3d 128, 135 (2d Cir. 2018). The reasonableness of an interpretation is analyzed "from the perspective of the 'least sophisticated consumer,' who ... lacks the sophistication of the average consumer and may be naive about the law, but is rational and possesses a rudimentary amount of information about the world." Id.

## I.      GABRIEL IS A "CONSUMER" PURSUANT TO 15 U.S.C. § 1692a(3)

The FDCPA defines "debt" as "any obligation or *alleged obligation* of a consumer to pay money arising out of a transaction." 15 U.S.C. § 1692a(5) [emphasis added]. A "consumer" is defined expansively as "any natural person obligated or *allegedly obligated* to pay any debt." 15 U.S.C. § 1692a(3) [emphasis added]. Courts interpreting the FDCPA have found that it protects against "unscrupulous debt collectors, regardless of whether a valid debt actually exists." Fedotov v. Peter T. Roach & Assocs., P.C., 354 F. Supp. 2d 471, 477 (S.D.N.Y. 2005) *quoting* Baker v. G.C. Services Corp., 677 F.2d 775, 777 (9th Cir.1982). "Hence, standing is afforded an aggrieved consumer to proceed under the Act so long as the collector was engaged in an attempt to collect an alleged debt." Id.

By communicating with Gabriel concerning the Mortgage, and by attempting to collect the Mortgage from her, Shellpoint was "engaged in an attempt to collect an alleged debt," Id., and she is thus a "consumer" as defined in 15 U.S.C. § 1692a(5).

## II.     SHELLPOINT IS A "DEBT COLLECTOR" PURSUANT TO THE FDCPA

The FDCPA only covers servicers who obtain a mortgage that is already in default." Johnson-Gellineau v. Steine & Assocs., P.C., 2019 WL 2647598, *30 (S.D.N.Y. June 27, 2019)

*quoting* <u>Gabrielle v. Law Office of Martha Croog</u>, 2012 WL 460264, at *4 (D. Conn. Feb. 9, 2012),

*aff'd*, 503 F. App'x 89 (2d Cir. 2012).

Shellpoint began servicing the Mortgage on or about June 18, 2018, Birnbaum Aff. Exhibit

E at p. 10. Rosemond died on May 29, 2000, Birnbaum Aff. Exhibit B. While the records disclosed

by Shellpoint in the course of discovery do not contain a complete record of all payments made

toward the Mortgage, the "Loan History Summary," Birnbaum Aff. Exhibit E, contains entries

dating back to October 9, 2015. No payments are reflected in the Loan History Summary for the

period from October 9, 2015 until Shellpoint became the loan servicer in June 2018. Id. As the

sole default event identified in the Note is non-payment of monthly payments, Birnbaum Aff.

Exhibit A at ¶ 5, and as the final monthly payment was due in 2011, and no monthly payments are

reflected for the entire documentary period prior to Shellpoint's acquisition of the loan as servicer,

the loan was in default when Shellpoint began servicing it. Additionally, the Complaint in the

Foreclosure Action pleads, on behalf of the predecessor-in-interest to the current holder, that the

Mortgage was already in default when that action was purportedly commenced in 2010, Birnbaum

Aff. Exhibit C at ¶¶ 7 and 8, and Rosemond.

### III.   SHELLPOINT VIOLATED THE FDCPA IN ITS COLLECTIONS ACTIVITIES DIRECTED AT GABRIEL

Shellpoint engaged in two forms of prohibited conduct in its communications with Gabriel

and committed various violations in those prohibited actions. First, Shellpoint ignored New York

state law concerning the statute of limitations applicable to mortgage loans by representing that it

could initiate or continue legal action concerning the Mortgage. Second, Shellpoint violated the

FDCPA by speaking to Gabriel at all about Rosemond's debts, because Gabriel was not a person

with whom Shellpoint was authorized to speak and Shellpoint knew that this was the case concerning said debt.

### a. Shellpoint Threatened to Initiate or Resume Litigation

It is a violation of the FDCPA to threaten "to take . . . action that cannot legally be taken," such as legal action on a debt that is time-barred. Such a communication is "in violation of Section 1692(e)(5), which also constitutes a "false representation" in violation of Section 1692e(10). Although it is permissible for a debt collector to seek to collect on a time-barred debt voluntarily, it is prohibited from threatening litigation with respect to such a debt." Larsen v. JBC Legal Group, P.C., 533 F. Supp. 2d 290, 303 (E.D.N.Y. Feb 12, 2008) [internal citations omitted].

Shellpoint, in a communication dated December 11, 2018 and thus within the one-year statute of limitations for FDCPA claims, directed correspondence to the Property concerning a "Trial Period Plan for a mortgage modification." Birnbaum Aff. Exhibit O at 1. This correspondence also threatened that "If you fail to make the first trial period payment by 01/01/2019 and we do not receive the payment by the last day of the month in which it is due, this offer will be revoked, foreclosure proceedings may continue, and a foreclosure sale may occur." Id. The correspondence repeated this threat a second time, "Any pending foreclosure action or proceeding that has been suspended may be resumed if you fail to comply with the terms of the plan or do not qualify for a permanent modification." Id. at 3. When cross-referenced with the Loan Comments History, Birnbaum Aff. Exhibit F at 21, it is clear that despite the correspondence being directed to "Estate of A Rosemond," Shellpoint knew that the actual intended target of the letter was Marguerite Gabriel.

Courts in this circuit generally held that the use of conditional language, e.g., "may commence litigation," *see generally* Sorel v. Capital One Servs., LLC, 2012 WL 3596487, *22

(D.Conn. Aug 20, 2012), makes it difficult to find that the least-sophisticated consumer would believe that a threat of litigation is imminent and that 1692e(10) has therefore been violated. In certain cases, however, when conditional language "that litigation *may* be brought is coupled with some other suggestion that litigation is imminent, the plaintiff has stated a claim that the letter falsely implies urgency." Dewees v. Legal Servicing, LLC, 506 F. Supp. 2d 128 (E.D.N.Y. June 29, 2007). In the instant case, the letter did not merely make vague threats that litigation might commence some time in the indefinite future, but that currently-pending foreclosure litigation would recommence. Because the conditional language was coupled with "some other suggestion that litigation is imminent," and made reference to a court proceeding actually pending, this is a threat sufficient to establish a claim under 15 U.S.C. 1692e(10).

### b.  The Litigation Shellpoint Threatened to Initiate or Resume was Time-Barred

Despite the fact that Shellpoint knew that the Mortgage was to be repaid on April 15, 2011, Birnbaum Aff. Exhibit A at 1, it took no action to confirm, pursuant to New York's "Zombie Debt Law," 23 CRR-NY 1.3, that the debt was not barred by the New York statute of limitations, which is six years. *See, ex.,* Bank of N.Y. Mellon v Dieudonne, 171 A.D.3d 34, 37 (N.Y. App Div. 2d Dept 2019), *citing* NY CPLR § 213(4). New York law requires that a "debt collector must maintain reasonable procedures for determining the statute of limitations applicable to a debt it is collecting and whether such statute of limitations has expired." 23 CRR-NY 1.3(a). The law further requires that before accepting a payment on such a debt, a debt collector must give a required notice concerning the statute of limitations and the New York law concerning revival of uncollectable debts when the "debt collector knows or has reason to know that the statute of limitations for a debt may be expired." 23 CRR-NY 1.3(b). No such notice was ever sent.

The holder of the Mortgage wrongfully continued to prosecute a foreclosure against Rosemond which was commenced more than ten years after his death, even though at New York law the dead may not be sued, rendering that action a nullity. <u>Matter of Foreclosure of Tax Liens</u>, 165 A.D.3d 1112, 1118 (N.Y. App Div. 2d Dept 2018). A nullity improperly commenced against the dead cannot toll the statute of limitations. *See* <u>Carrick v. Central General Hospital</u>, 51 N.Y.2d 242, 245 (N.Y. 1980). This is not an obscure point of law – in New York "it is well established that the dead cannot be sued." <u>Marte v. Graber</u>, 58 A.D.3d 1, 3 [N.Y. App. Div. 1st Dept. 2008]. Indeed, any reasonably prudent legal practitioner should be familiar with the rule that cases purportedly commenced against the dead are a nullity, a rule that should be familiar since "a significant number of other district courts have ruled that the dead cannot sue or be sued." <u>LN Mgmt., LLC v. JPMorgan Chase Bank, N.A.</u>, 957 F.3d 943, 954 (9th Cir. 2020) (collecting cases), including courts in this Circuit. *See, ex.,* <u>Banakus v. United Aircraft Corp.</u>, 290 F. Supp. 259, 260 (S.D.N.Y. Sept. 23, 1968).

The debt was thus entirely barred by the statute of limitations. Irrespective of the outcome of the Foreclosure Action, which is (at this time) still pending, had it conducted a reasonably diligent review of the loan Shellpoint could and should have discovered that the loan *may* be uncollectable, which was all that is required at New York law to require the statute of limitations notice to be sent to the debtor. Instead, from its own evidence, Shellpoint did nothing whatsoever. From testimony of a former Shellpoint employee, and unrebutted by any documentary or testimonial evidence, Shellpoint had no systems in place to conduct such a review, Birnbaum Aff. Exhibit Q at ¶ 16, and its employees received no training on how to determine whether debts might have been time-barred, Birnbaum Aff. Exhibit L at 68. Further, and unsurprisingly, none of the communications Shellpoint sent to Gabriel or the Property contained the required notice pursuant

11

to 23 CRR-NY 1.3(b) which might have put Gabriel on notice that, by making payment or otherwise assuming responsibility for the Mortgage, she would be reviving a debt upon which Shellpoint could otherwise not sue. Despite these failings, Shellpoint continued to communicate with Gabriel about the debt and continued suggesting that it would take or continue legal action to collect it, further misrepresenting the status of the debt in violation of 15 U.S.C. § 1692(e).

The burden imposed on Shellpoint as the debt collector is not the same as that imposed upon the holder of the Mortgage. New York's Zombie Debt Law mirrors the FDCPA in this respect in that it is directed, not at the creditor, but at the "debt collector" itself. The duty to have mechanisms in place specifically for evaluating whether the New York statute of limitations has expired, and affirmatively providing notice that the statute of limitations "may be expired" 23 CRR-NY 1.3(a), is upon Shellpoint as the debt collector as a freestanding obligation independent of the actions of the creditor. When the law specifically imposes a requirement that the debt collector conduct a verification, the debt collector may not escape liability under the FDCPA by merely directing its questions to the creditor. *See,* Tardi-Osterhoudt v. McCabe, Weisberg & Conway LLC, 2019 WL 4242410, *32 (N.D.N.Y. Sept. 6, 2019) (in the 15 U.S.C. § 1692g verification context).

To the extent that Shellpoint may claim that the error in interpreting New York law was inadvertent, it is still the law in this Circuit that "such mistakes of [state] law do not provide a basis for a section 1692k(c) defense." Ceraldi v. Strumpf, 3:17-CV-1628 (JCH), 2020 U.S. Dist. LEXIS 89257, *11 (D.Conn. May 19, 2020) *citing* Gervais v. Riddle & Assocs., P.C., 479 F. Supp. 2d 270, 279 (D. Conn. 2007). And the simple fact that Shellpoint apparently had no mechanisms or procedures in place for avoiding these errors, if they were errors at all, further mandates against allowing a defense of inadvertency to stand.

### c. **Shellpoint Violated the FDCPA by Communicating with Gabriel About Rosemond's Debts**

While Gabriel is, obviously, not Rosemond, and while the initial communication of June 21, 2018 was not directed at Gabriel, it is not a requirement of the statute that a third-party with whom the debt collector impermissibly communicates lacks standing to bring an FDCPA claim just because the third party initiated the communication. Even if this Court finds that Gabriel was not a "consumer," the FDCPA allows claims against "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person […]" 15 U.S.C. § 1692k(a). "[W]here the third-party alleges a direct harm and actual damages from a communication proscribed by §§ 1692b and 1692c(b), the Court finds such party has standing to sue under § 1692k." Thomas v. Consumer Adjustment Co., 579 F. Supp. 2d 1290, 1299 (E.D.Mo. Sept. 30, 2008), *accord* Diaz v. D.L. Recovery Corp., 486 F. Supp. 2d 474, 477 (E.D.Pa. April 23, 2007), *citing* Austin v. Great Lakes Collection Bureau, 834 F. Supp. 557, 559 (D. Conn. 1993). While some courts in this Circuit have questioned whether a non-party to the debt has standing to sue based on a communication in violation of 1692e, in cases where the non-party was injured by the communication, standing exists. *See* Barasch v. Estate Info. Servs., LLC, 2009 WL 2900261, *10 (E.D.N.Y. Sept. 2, 2009) *citing* Sibersky v. Goldstein, 155 F. App'x 10, 11 (2d Cir. 2005).

By speaking with Gabriel *at all* about Rosemond's debt, Shellpoint violated 15 U.S.C. § 1692c. Shellpoint had both constructive and actual knowledge that Rosemond was deceased, and indeed the very first communication Shellpoint directed to the Property after assuming responsibility for servicing the loan was addressed to "Estate of A Rosemond," Birnbaum Aff. Exhibit M. There is no allegation that Gabriel represented herself as any other category of person with whom Shellpoint could, legally, communicate about the decedent's debts. Shellpoint had constructive and actual knowledge that Gabriel was not among the persons with whom a debt

collector is authorized to speak about the debts of a deceased consumer, as she was not Rosemond's "spouse, parent (if the consumer is a minor), guardian, executor, or administrator." 15 U.S.C. § 1692c(d). In fact, had Shellpoint not violated the law, Gabriel would not have signed the assumption agreement.

While Gabriel's previous attorney represented, incorrectly and apparently innocently, that Gabriel was the "executor" of Rosemond's estate, Birnbaum Aff. Exhibit R, Shellpoint knew this to be incorrect and cannot, therefore, claim that it relied on this representation. Even if the knowledge of the creditor's activities in the Kings County Surrogate's Court dating back to 2014, Birnbaum Aff. Exhibit G, cannot be imputed to Shellpoint by virtue of its status as a debt collector, *see* Powers v. Professional Credit Servs., Inc., 107 F. Supp. 2d 166, 169 (N.D.N.Y. Aug. 1, 2000), Shellpoint's records reveal that Gabriel was deemed to not be an authorized person to speak about the loan according to Shellpoint's internal policies. Shellpoint's review of the file concluded that the will Gabriel's attorney provided had not been submitted to any court, and that no court had appointed her executor. Birnbaum Aff. Exhibit F at 24 ("File is still on probate hold"); Birnbaum Aff. Exhibit L at 16. None of the documents Gabriel or her prior counsel supplied to Shellpoint contained such an order or decree.

There have been cases where an FDCPA plaintiff acted to "entrap" the debt collector by initiating contact and actively procuring the violation which the plaintiff later complained of in his complaint, *see ex.* Huebner v. Midland Credit Mgmt., 14 Civ. 6046 (BMC), 2016 U.S. Dist. LEXIS 73211, *30 (E.D.N.Y. June 3, 2016). No such allegation has been made here, certainly not in the Defendant's conclusory pleading of its unclean hands defense. And in any event, it would be beyond belief that the Plaintiff incurred more than $60,000.00 in liabilities, and spent more than $5,000.00 out-of-pocket in payments towards the Mortgage, based on the hope of an eventual

14

recovery in an FDCPA action. Rather, it seems that the Plaintiff's former counsel was simply incorrect when she represented that Gabriel was the "executor" of Rosemond's estate. Shellpoint, as discussed above, knew better.

Shellpoint received actual notice that Tony Rosemond and Sonja Rosemond had been appointed administrators of Rosemond's estate. Birnbaum Aff. Exhibit F at 24. Despite this knowledge, Shellpoint continued communicating with Gabriel by telephone and by postal mail, even after receiving notification that administrators had been appointed for the estate. Within the one-year statute of limitations applicable to FDCPA claims, Shellpoint mailed Gabriel another copy of the assumption agreement it prepared and, by phone and by mail, encouraged her to sign it so she could "make sure that you're able to go ahead and keep your property," Birnbaum Aff. Exhibit L at 61 – an implicit threat to begin or continue legal action. Shellpoint *never* attempted to communicate with the appointed administrators to arrange that the debt be repaid from the estate's assets. Birnbaum Aff. Exhibit P at ¶ 5. Instead, Shellpoint persisted in pursuing Gabriel personally for the debt even after, not merely receiving word that other persons had been appointed as administrators for the Estate of Anthony Rosemond, but after authorizing a payment of $860 to the attorneys who appeared at the Surrogate's Court citation date on Tony and Sonja Rosemond's cross-petition for administrator. Birnbaum Aff. Exhibit F at 29. Shellpoint cannot claim that it was unaware that Gabriel was not the executor under such circumstances. It had an active hand in the proceedings that resulted in the appointment of the Estate's actual representatives.

After receiving postal mail at the Property addressed to the "Estate of A Rosemond," Gabriel unquestionably called Shellpoint concerning this piece of correspondence. This fact, however, does not relieve Shellpoint of its obligation to only communicate with one of the enumerated categories of persons concerning the debts of the deceased pursuant to 15 U.S.C. §

15

1692c(d), nor does it reduce Gabriel's right to her actual damages resulting from Shellpoint's subsequent impermissible communications. All that is needed is a violation of Shellpoint. While courts have discretion to reduce or eliminate the *statutory* damages in cases where contact with an unauthorized person was inadvertent, see ex. Emanuel v. American Credit Exchange, 870 F.2d 805, 809 (2d Cir 1989), *see also* Sterling v. Am. Credit & Collections, LLC, 2012 WL 3553757, *10 (D.Colo. 2012); *accord* Beattie v. D.M. Collections, Inc., 764 F. Supp. 925, 926 (D.Del. 1991), this is not the case with actual damages. Even if the Court finds that Shellpoint's contact with Gabriel was due to carelessness or error, because she has suffered actual damages as a result of the violation, this notional carelessness would allow the Court to reduce only the $1,000.00 statutory damages claimed herein.

Gabriel suffered actual damages and accrued tens of thousands of dollars in liability that she otherwise would not have done, all because of Shellpoint's numerous violations. In addition to the outstanding liabilities she incurred because of Shellpoint's pursuit of her signature on the assumption agreement it prepared, Gabriel also sent Shellpoint $5361.60 in payments for the period covering January through May 2019, Birnbaum Aff. Exhibit T, payments within the one-year statute of limitations that she could have never known to make had Shellpoint not persisted in communicating with her about Rosemond's debts.

Thus, the award of actual damages is non-discretionary once a violation is found, unless Shellpoint can prove that the violation was inadvertent and that it had mechanisms in place for avoiding such an error. In this case, no such mechanisms were in place; as discussed above, neither Shellpoint in its discovery responses nor through the deposition of its former employee claimed that there were any procedures in place to avoid such violations. Ms. Martinez, in fact, had never heard the term "statute of limitations," Birnbaum Aff. Exhibit L at 42, and knew of no internal

16

mechanisms for determining that such a review was *ever* conducted at Shellpoint, Id. at 67 – 68. A deposition of Shellpoint's designated corporate representative confirmed that no such internal review takes place, contrary to New York state law. Likewise, Shellpoint apparently had no internal mechanisms in place to discontinue contact with a person who is later determined to not be authorized to discuss the decedent's debts. Birnbaum Aff. Exhibit L at 30.

### IV.    DEFENDANTS' AFFIRMATIVE DEFENSES ARE MERITLESS

Defendant asserted affirmative defenses of estoppel, waiver and release; unclean hands; and statute of limitations. Other than conclusory legal statements, the evidence does not support any of the Defendant' four boilerplate affirmative defenses.

Defendant has not identified what, if any, conduct on Gabriel's part might establish that she is estopped from asserting the instant FDCPA claim. It has not identified any waiver or release of said claim; the only instrument that might establish such a waiver or release is paragraph six of the Assumption Agreement, Birnbaum Aff. Exhibit J, which concerns only claims against the "Original Lender, Lender, and their respective successors, assigns, agents, directors, officers, employees, and attorneys, and each current or substitute trustee under the Security Instrument" but omits Shellpoint, as the debt servicer, itself. The unclean hands defense similarly does not apply, as Shellpoint cannot establish that Gabriel's counsel's mistaken representation, discussed above, was made in anything other than error, nor that it relied on the representation as it knew that Gabriel was not the executor of Rosemond's estate. Finally, as there was indisputably continuous and ongoing communication from Shellpoint to Gabriel within the 1-year statute of limitations, it is not clear what, if any, applicability this affirmative defense has. To the extent that prior communications or entries in Shellpoint's records have been discussed or offered as exhibits in

this motion, these are to establish knowledge, not that said communications constitute the actionable breaches.

**V.      GABRIEL IS ENTITLED TO REASONABLE ATTORNEY'S FEES AND STATUTORY DAMAGES**

"Under the FDCPA, "any debt collector who fails to comply with any provision of this subchapter with respect to any person *is liable* to such in an amount equal to the sum of ... (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a *reasonable* attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3) (emphasis added). Based on the plain language of the statute, a debt collector in violation of the FDCPA "is liable" for reasonable attorney's fees and costs to a successful plaintiff, which suggests that courts do not have discretion to determine whether attorney's fees should be awarded in the first instance where a plaintiff has prevailed. *See id*. Consequently, the Second Circuit has generally viewed the attorney's fees provision of the FDCPA as mandatory, awarding costs and reasonable attorney's fees as "a matter of course" to prevailing plaintiffs. *See* Jacobson v. Healthcare Fin. Servs., 516 F.3d 85, 95 n. 8 (2d Cir. 2008) (noting that "[t]he award of costs and fees to a successful plaintiff appears to be mandatory"); Savino v. Computer Credit, Inc., 164 F.3d 81, 87 (2d Cir. 1998) ("Where a plaintiff prevails, whether or not he is entitled to an award of actual or statutory damages, he should be awarded costs and reasonable attorney's fees in amounts to be fixed in the discretion of the court."); Emanuel v. Am. Credit Exch., 870 F.2d 805, 809 (2d Cir. 1989) ("[Plaintiff] should be awarded costs and attorney's fees; the [FDCPA] mandates such an award 'in the case of any successful action.'") (*quoting* 15 U.S.C. § 1692k(a)(3)); Nicaisse v. Mel S. Harris & Assocs., LLC, 2015 WL 5561296, at *2 (E.D.N.Y. Sept. 19, 2015) ("Because the statute requires the award of costs and a reasonable attorney's fee, the Plaintiff's motion is granted. The only question before the Court is whether the amounts sought by the Plaintiff are reasonable.") (internal quotation and

citation omitted); <u>Wilner v. OSI Collection Servs., Inc.</u>, 201 F.R.D. 321, 323 (S.D.N.Y. 2001) ("[G]iven the structure of the section [§ 1692k(a)(3)], attorney's fees should not be construed as a special or discretionary remedy.") (<u>citing Teng v. Metropolitan Retail Recovery</u>, 851 F. Supp. 61, 70 (E.D.N.Y.1994))." <u>Datiz v. Int'l Recovery Assocs.</u>, 2020 WL 5899881, *16-17 (E.D.N.Y. Mar. 12, 2020) [internal citations and emphasis in original preserved].

"Courts in this Circuit have noted that "[a]wards of the statutory maximum are typically granted in cases where the defendants' violations are egregious" while "a $500 award is appropriate where there is no repeated pattern of intentional abuse or where the violation was technical." In particular, "[f]actors to be considered by the court in determining an appropriate statutory damages award include the frequency, persistence, and nature of the debt collector's noncompliance, and the extent to which the debt collector's noncompliance was intentional." <u>Rani v. Drobenare</u>, 1:19-CV-05186 (MKB) (ST), 2020 U.S. Dist. LEXIS 151327, *24 (E.D.N.Y. Aug. 19, 2020) (internal citations omitted).

Should the Court agree with Gabriel that there have been violations of the FDCPA and that Gabriel has suffered actual damages or is entitled to statutory damages, the award of her reasonable attorney's fees is mandatory, and the Court should, upon such a finding, direct counsel to submit affidavits concerning the amount and reasonableness of the fees Gabriel incurred. *See,* <u>Datiz</u>, 2020 U.S. Dist. LEXIS 45693 at *21, *quoting* <u>Emanuel v. Am. Credit Exch.</u>, 870 F.2d 805, 809 (2d Cir. 1989).

As for statutory damages, Gabriel is entitled to the full quantum of damages permitted by the statute of $1,000, in addition to her actual damages. The conduct in this case was repeated and egregious. Shellpoint had actual knowledge that Gabriel was not among the third parties with whom it was permitted to communicate. Shellpoint never took any action to contact the actual

representatives of Rosemond's estate, instead pursing Gabriel for the debt, eventually convincing her to make months of payments toward the mortgage. Worse, Shellpoint convinced Gabriel to assume responsibility for the entirety of the Mortgage's outstanding balance, including not just the loan principal but also interest, fees, disbursements, and penalties, nearly all of which had accrued after Rosemond was deceased and all of which was barred by statute of limitations.

Shellpoint, by its own admission, had no procedures or mechanisms in place to ensure that it was not attempting to collect on debts which were barred by the New York statute of limitations. It had no procedures in place to comply with New York's Zombie Debt Law, including no provision for evaluating whether loans might be uncollectable. It did not send notices to Gabriel pursuant to New York's Zombie Debt Law before accepting payment from her. This lack of adequate internal controls and procedures mandates imposition of the full amount permissible by the FDCPA.

## <u>CONCLUSION</u>

Defendant Shellpoint, in its collections activity directed at Gabriel, violated the FDCPA by misrepresenting that it was entitled to commence or continue legal action upon a debt that was time-barred at the time the representation was made. It further violated the FDCPA by communicating with Gabriel at all, even though it had actual knowledge that she was not the deceased debtor's "spouse, parent (if the consumer is a minor), guardian, executor, or administrator." 15 U.S.C. § 1692c(d). To whatever extent Shellpoint may claim that it relied upon Gabriel's counsel's representation that Gabriel was the executor of Rosemond's estate, such notional reliance is belied by both Shellpoint's review of the file, and by its actual knowledge that other persons had been appointed for Rosemond's estate.

That Shellpoint apparently had no controls in place mandating discontinuance of communication with unauthorized third parties does not allow it to take safe harbor in 15 U.S.C. § 1692k(c), for the simple reason that it did not have "maintenance of procedures reasonably adapted to avoid any such error." By Shellpoint's own admission, there were no such procedures.

Further, because Shellpoint's actions directed at Gabriel were repeated, egregious, and taken with actual knowledge that Gabriel was not an authorized third-party, Gabriel should recover the full $1,000 in damages permitted by statute, plus her actual damages consisting of $67,305.73 related to the newly signed assumption agreement, attorneys' fees incurred in the foreclosure action of no less than $8,000.00, and $5,361.60 in payments made against the uncollectable debt. Finally, should the Court find FDCPA violations, and it should, Gabriel is entitled to recover her reasonable attorney's fees, and should order further submissions on their amount and reasonableness.

Dated: December 7, 2020

Respectfully Submitted,

**KORSINSKY & KLEIN, LLP**

By: /s/Michael Korsinsky
    Michael Korsinsky (MK-8900)
2926 Avenue L
Brooklyn, NY 11210
Tel: 212-495-8133
Fax: 212-419-3893
Email: mk@kklawfirm.com
*Attorneys for Plaintiff*

21