UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------x

   MARGUERITE GABRIEL,

                    Plaintiff,            **MEMORANDUM & ORDER**
                                          19-CV-6738(EK)(VMS)
               -against-

   NEWREZ LLC,

                    Defendant.

-----------------------------------x

ERIC KOMITEE, United States District Judge:

          Plaintiff Marguerite Gabriel brought this action under
the Fair Debt Collection Practices Act.  The defendant is Newrez
LLC, which does business as Shellpoint Mortgage Servicing
("Shellpoint").  Gabriel argues that Shellpoint violated the
FDCPA by (a) contacting her about the debt of her deceased
partner, even though she was not in the "enumerated categories
of persons with whom a debt collector may communicate" under the
FDCPA, and (b) indicating that Shellpoint could foreclose on the
house she was living in if she refused to assume the debt, even
though the debt was uncollectible because New York's statute of
limitations had expired.

          The parties have now cross-moved for summary judgment.
For the reasons set forth below, Shellpoint's motion is granted,
and Gabriel's motion is denied.

## I.  Background

There is little dispute over the material facts, which are set forth in the evidentiary record and the uncontested evidence identified in the parties' Local Rule 56.1 Statements of Undisputed Material Facts.  The facts are set forth in the light most favorable to Gabriel.

The debt in question was undertaken not by Gabriel but by her "long term partner," Anthony Reid Rosemond.  Pl. Marguerite Gabriel's Statement of Undisputed Facts in Supp. of Mot. for Summ. J. ("Pl. 56.1") ¶¶ 1–2, 5, ECF No. 37-2. Rosemond executed a loan agreement in 1996, secured by a mortgage on real property located on East 56th Street in Brooklyn.  *Id.*  ¶¶ 1–2.  The mortgage loan, which had an original principal amount of $32,000.00, was due to be repaid in full by April 15, 2011.  *Id.* ¶¶ 3–4.

Rosemond died in 2000, four years after taking out the loan.  *Id.* ¶ 5.  He left a will that named "MAGUERITE [sic] GABRIEL" as one of two "Sole Executors" of his estate.  Last Will and Testament of Anthony Reid Rosemond ¶ 2, Ex. R to Birnbaum Decl., ECF No. 37-21;[1] *see* Defs.' Counterstatement of

---

[1] Page numbers in citations to record documents other than briefs refer to ECF pagination rather than the documents' native page numbers.

Undisputed Material Facts ("Def. 56.1") ¶ 4, ECF No. 38-3.[2]  For reasons that do not appear in the record, however, the Kings County Surrogate's Court appointed others — and not Gabriel — to the executor role.  Pl. 56.1 ¶ 12.

In 2010, the party holding the mortgage filed a foreclosure action in New York State Supreme Court.  *Id.* ¶ 6. The caption named Rosemond personally, not the estate, despite his passing.  This case would not resolve for more than twelve years.  The parties have not explained this delay, but it may have been related to the mortgage having been assigned seven times over the next decade.  *Id.* ¶ 7.

Shellpoint became the servicer for the mortgage in 2018.  *Id.* ¶ 8.  Shortly thereafter, Shellpoint sent a letter addressed to the "ESTATE OF A ROSEMOND" at the 473 East 56th Street address.  Letter dated June 21, 2018, Ex. M to Decl. of Adam M. Birnbaum ("Birnbaum Decl."), ECF No. 37-16.  The letter, which began "Dear Homeowner," offered the possibility of "temporary or long-term relief, including mortgage options that

---

[2] Citations to "Def. 56.1" will refer to Shellpoint's "Statement of Additional Material Facts"; citations to "Def. 56.1 Responses" will refer to its "Response to Plaintiff's Statement of Undisputed Facts."  Gabriel did not submit any response to Shellpoint's Statement of Additional Material Facts; accordingly, she is deemed to have admitted those facts.  *See* Local Rule 56.1; *see also FL Fresh & Frozen Fruits & Vegetables, Inc.*, No. 06-CV-2142, 2007 WL 4302514, at *5 (S.D.N.Y. Dec. 7, 2007) (movant's Rule 56.1 statements are admitted "unless specifically controverted by a correspondingly numbered paragraph in the opposing party's Rule 56.1 statement and followed by citation to evidence").

may allow you to stay in your home or leave your home while avoiding foreclosure." *Id.* Gabriel objects to the reference to the recipient's ability to stay in the home, suggesting that it later caused her to assume Rosemond's debt under duress. Mem. of Law in Supp. of Pl. Marguerite Gabriel's Mot. for Summ. J. ("Pl. Mem.") 3, ECF No. 37-3. The Complaint does not, however, specifically allege that (or how) this statement was false or misleading.

Whatever the propriety of that letter, Shellpoint contends that Gabriel's response gave it "the ability to discuss the loan with her." Shellpoint's Reply Further Supporting Its Mot. for Summ. J. 4, ECF No. 40. Two weeks after it sent the first letter, Gabriel and her then-attorney, Sara Bovill, called Shellpoint. Pl. 56.1 ¶ 9; Def. 56.1 Responses ¶ 9. According to Shellpoint's records, the attorney stated that she was "with the executor of [the] estate and would like to speak regarding the loan." Loan History 37, Ex. F to Birnbaum Decl., ECF No. 37-9; *see* Def. 56.1 ¶ 2. The Shellpoint representative informed Bovill that Shellpoint had no authorization or executorship documents on file for Gabriel. *Id.* Fifteen minutes later, Bovill emailed Shellpoint Rosemond's death certificate, his will, and an authorization form (signed by Gabriel) to permit Shellpoint to discuss "[Gabriel's] loan bearing Loan Number [redacted]." *See* Bovill Email dated July 6, 2018, Ex. R. to

Birnbaum Decl., ECF No. 37-21 (redaction in original).  Bovill's
email further requested that Shellpoint "update your files so
that Ms. Gabriel can begin loss mitigation processes."  *Id.*

Several weeks later, Bovill again contacted
Shellpoint — this time to request that Shellpoint draft and mail
to Gabriel an agreement under which Gabriel would assume the
loan.  Def. 56.1 ¶ 7; *see* Loan History 31.  A few months after
that, Gabriel called Shellpoint herself to advise that she had
only recently received the agreement, which had been delivered
to a neighbor's home.  Def. 56.1 ¶ 8.  The Shellpoint
representative informed Gabriel that the old assumption
agreement was no longer valid, but that a new plan could be
created if Gabriel remained interested.  *Id.* ¶ 9.

The communication that forms the basis of this
lawsuit — and the only relevant communication that falls within
the FDCPA's one-year statute of limitations — occurred shortly
thereafter.  On December 11, 2018, Shellpoint sent a second
letter, again addressed to "ESTATE OF A ROSEMOND."  Letter dated
Dec. 11, 2018 (the "December 2018 Letter"), at 1, Ex. O to
Birnbaum Decl., ECF No. 37-18.  This letter suggested (yet
again) that Shellpoint could proceed to foreclose on the
Brooklyn property; Gabriel contends that this suggestion was
false and misleading because the relevant statute of limitations
had expired.

As relevant here, the letter stated:

Dear Homeowner(s),

Thank you for contacting us about your mortgage.
Based on a careful review of the information you
provided, you are approved to enter into a Trial
Period Plan for a mortgage modification.

. . .

If you fail to make the first trial period payment by
01/01/2019 and we do not receive the payment by the
last day of the month in which it is due, this offer
will be revoked, foreclosure proceedings may continue,
and a foreclosure sale may occur.

. . .

Any pending foreclosure action or proceeding that has
been suspended may be resumed if you fail to comply
with the terms of the plan or do not qualify for a
permanent modification.

*Id.* at 1, 3.

Through this letter, the Complaint asserts,

"Shellpoint finally browbeat Gabriel into signing an assumption

agreement" that rendered her "liable for the full face amount of

the Mortgage plus interest, fees and penalties" — despite these

amounts actually being "uncollectable at New York law."  Compl.

¶ 22; *see* Def. 56.1 ¶ 11.  Gabriel paid Shellpoint about $5,000

in loan payments in early 2019.  *See* Checks dated January 1,

2019 through April 25, 2019, Ex. T to Birnbaum Decl., ECF No.

37-23.

Gabriel sued Shellpoint in her individual capacity

(not as executor).  *See* Compl. ¶¶ 1-2, 29, ECF No. 1.  The

parties then cross-moved for summary judgment.  While those
motions were pending, on August 10, 2022, the Kings County
Supreme Court dismissed the 2010 foreclosure action, holding
that it was a "nullity" for having been "commenced against a
Defendant who [was] already deceased."  Decision & Order, *HHLD
Finance Realty Corp. of NY v. Rosemond*, Index No. 20050/2010, at
1-2, ECF No. 46-1.  The state court's order did not specify
whether the dismissal was with or without prejudice.

## II.  Legal Standards

Summary judgment is appropriate if the record
demonstrates that "there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter
of law."  Fed R. Civ. P. 56.  "A fact is material for these
purposes if it might affect the outcome of the suit under the
governing law.  An issue of fact is genuine if the evidence is
such that a reasonable jury could return a verdict for the
nonmoving party."  *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263
F.3d 208, 212 (2d Cir. 2001).[3]

The moving party has the burden of demonstrating the
absence of a question of material fact.  *Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 256 (1986).  This burden "may be

---

[3] Unless otherwise noted, when quoting judicial decisions this order
accepts all alterations and omits all citations, footnotes, and internal
quotation marks.

discharged by showing — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the movant carries that burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

"When faced with cross-motions for summary judgment, a district court is not required to grant judgment as a matter of law for one side or the other." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993).  "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.*

### III.  Discussion

The Complaint levies only one claim, for "Violations of the Fair Debt Collection Practices Act"; that claim references Sections 1692e and 1692k of the statute.  Compl. ¶¶ 23–29.  Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," while Section 1692k provides the remedies available for a violation of the FDCPA (including Section 1692e).  The parties cross-move for summary

judgment on this claim. *See* Mem. of Law in Supp. of Pl.
Marguerite Gabriel's Mot. for Summ. J. ("Pl. Mem.") 9–12, ECF
No. 37-3; Shellpoint's Mem. of Law Opposing Marguerite Gabriel's
Mot. for Summ. J. and Supporting Its Mot. for Summ. J. 6–14, ECF
No. 38-4.

In her summary judgment papers, Gabriel seeks to rely
on another section of the FDCPA — 15 U.S.C. § 1692c — despite
having omitted any reference to that section in the Complaint.
Section 1692c prohibits a debt collector from communicating
about a debt with anyone other than the debtor and certain other
persons.  Gabriel's brief argues that Shellpoint violated
Section 1692c when it communicated with her about Rosemond's
debt because she was not one of the individuals with whom the
FDCPA permits such communication.  *See* Pl. Mem. 13 ("By speaking
with Gabriel *at all* about Rosemond's debt, Shellpoint violated
15 U.S.C. § 1692c.").  I consider Gabriel's 1692e and 1692c
claims in turn below.

## A.   Gabriel Cannot Prevail on Her Section 1692e Claim Because Shellpoint's Statements Were Factually Accurate

As noted, Section 1692e prohibits debt collectors from
using "any false, deceptive, or misleading representation or
means in connection with the collection of any debt."  15 U.S.C.
§ 1692e.  The statute provides a non-exhaustive list of examples
of such representations.  In her summary judgment papers,

Gabriel cites two: Section 1692e(5), which prohibits any "threat to take any action that cannot legally be taken or that is not intended to be taken"; and Section 1692e(10), which prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *See* Pl. Mem. 9.[4]

Gabriel points to two sentences in particular in Shellpoint's December 2018 letter.  Pl. Mem. 9.[5]  First, Shellpoint stated that if "you" failed properly to make the first payment on the trial period plan that Shellpoint had approved, "foreclosure proceedings may continue, and a foreclosure sale may occur."  December 2018 Letter 1.  Second, Shellpoint stated that if "you fail to comply with the terms of the plan or d[id] not qualify for a permanent modification," "[a]ny pending foreclosure action or proceeding that has been suspended may be resumed."  *Id.* at 3.  Gabriel argues that "despite the correspondence being directed to 'Estate of A

---

[4] In her Complaint, Gabriel also cites 15 U.S.C. § 1692e(2)(A), which prohibits "[t]he false representation of . . . the character, amount, or legal status of any debt."  Compl. ¶ 24.  But she neither raises this provision in her summary judgment papers nor provides any corresponding argument that is not coextensive with the analysis of Sections 1692e(5) and 1692e(10) that follows.  Any claim premised on Section 1692e(2)(A) thus fails for the same reasons as discussed below.

[5] Unlike with Section 1692c, Gabriel clearly has statutory standing to pursue a claim under Section 1692e.  *See Barasch*, 2009 WL 2900261, at *2 ("Unlike § 1692c, which is limited to communications with consumers (as defined by that section), § 1692d and § 1692e are stated more broadly, and may extend to any person 'harmed' or 'aggrieved' by a prohibited practice.").

Rosemond,' Shellpoint knew that the actual intended target of the letter was Marguerite Gabriel."  Pl. Mem. 9.

Gabriel argues that these statements are false and misleading for the same reason: because Shellpoint could not actually maintain a valid foreclosure action on the home under the applicable statute of limitations.  *See* Reply Mem. of Law in Further Supp. of Pl. Marguerite Gabriel's Mot. for Summ. J. ("Pl. Reply") 6–7 ("Shellpoint ignored New York state law concerning the statute of limitations applicable to mortgage loans by representing to Gabriel that it could initiate or continue legal action concerning the mortgage on the property . . . ."), ECF No. 39.  Whether this assertion is true is a primarily a legal question, and Gabriel is incorrect as a matter of law, even on the undisputed facts.

As Gabriel acknowledges, New York's statute of limitations for a mortgage loan debt is six years.  Pl. Reply 7–8; *see* N.Y. C.P.L.R. § 213(4).  Thus, the last possible date on which a lawsuit could have been commenced was April 15, 2017, six years after the last payment on Rosemond's loan came due. *See Loiacono v. Goldberg*, 658 N.Y.S.2d 138 (App. Div. 2d Dep't 1997) ("The law is well settled that with respect to a mortgage payable in installments, there are separate causes of action for each installment accrued, and the Statute of Limitations begins to run, on the date each installment becomes due.").

But the noteholder initiated suit on August 12, 2010, long before the expiry of the statute of limitations.  *See* Pl. 56.1 ¶ 6.  Gabriel responds that this lawsuit was not a valid foreclosure action because it named Rosemond himself, rather than the estate, as a defendant, and under New York law, a lawsuit initiated against a deceased person is a legal "nullity."  *Marte v. Graber*, 867 N.Y.S.2d 71 (App. Div. 1st Dep't 2008); *see also Fed. Nat'l Mortg. Ass'n v. Tudor*, 128 N.Y.S.3d 546 (App. Div. 2d Dep't 2020) ("[W]here a mortgagor dies prior to the commencement of a foreclosure action, the action is a 'legal nullity,' insofar as asserted against the deceased mortgagor.").  Indeed, the New York state court dismissed the lawsuit last year on precisely that ground.  *See* Decision & Order, *HHLD Finance Realty Corp.* 2 ("Because an action purportedly commenced against the dead is a nullity from its inception, the Court is deprived of jurisdiction to provide any relief to any party, including the addition or substitution of parties or amendment of the case caption.").

Notwithstanding this error, the statute of limitations still presented no bar to refiling when Shellpoint sent the December 2018 Letter.  Section 205(a) of the New York Civil Practice Law and Rules provides an extension under which a new foreclosure suit may be timely maintained.  That section extends the time to commence a new action until six months after the

termination of an old, technically defective action that arose out of the same set of transactions or occurrences. *See* N.Y. C.P.L.R. § 205(a). As the Second Department explained in *Sokoloff v. Schor*, Section 205(a) permits refiling when three conditions are met:

> First, the new action will be permitted only if it would have been timely if commenced at the time of the prior action. Second, the new action must be commenced within six months of the termination of the prior action. Third, the prior action must be terminated for reasons other than its voluntary discontinuance, the failure to obtain personal jurisdiction over the defendant, neglect to prosecute, or a final judgment upon the merits.

109 N.Y.S.3d 58, 65 (App. Div. 2d Dep't 2019). If those conditions are satisfied, "[t]he six-month extension applies regardless of how long the prior action had been pending and regardless of how far the parties are beyond the limitations period, so long as the prior action was itself timely." *Id.* The new action is then considered timely under the relevant statute of limitations. *Id.* at 64–65.

As a result, at the time Shellpoint sent its letter, it was clear that even if the 2010 action were a legal nullity, a new foreclosure suit could satisfy the requirements of Section 205(a) and thus be considered timely. As discussed, a proper foreclosure lawsuit would have been timely at the time the 2010 action was filed. And a dismissal for failure to name the decedent's estate rather than the decedent is not a "voluntary

discontinuance, . . . failure to obtain personal jurisdiction over the defendant, neglect to prosecute, or a final judgment upon the merits." *Id.* at 64.

At oral argument, Gabriel argued that dismissal on the ground that a named party was dead when it was commenced is a dismissal for lack of personal jurisdiction. Tr. of Oral Arg. 18:11–21, ECF No. 45. Gabriel cited no authority for this proposition, however, either in her briefs or at oral argument. Instead, she posited simply that "there are a variety of cases from the late 19th century that opine about the impossibility of obtaining personal jurisdiction over someone who is deceased." *Id.* at 18:14–18. She also argued that "there's no means of obtaining jurisdiction over someone who is deceased," because they "cannot be served." *Id.* at 18:18–21.

This argument is incorrect. Although a New York court will dismiss an action commenced against a deceased defendant as a legal "nullity" and for lack of "jurisdiction," such dismissals are not said to be for lack of *personal* jurisdiction. *See, e.g.*, *US Bank Nat. Ass'n v. Cadeumag*, 47 N.Y.S.3d 358, 359 (App. Div. 2d Dep't 2017) ("this Court has no jurisdiction to hear and determine the appeal purportedly taken by the deceased defendant"); *Jordan v. City of New York*, 807 N.Y.S.2d 595, 597 (App. Div. 2d Dep't 2005) ("this court has no jurisdiction to hear and determine that purported appeal"). On the contrary,

under New York law, personal jurisdiction has two components: "service of process" and "the power, or reach, of a court over a party, so as to enforce judicial decrees." *Keane v. Kamin*, 723 N.E.2d 553, 554 (N.Y. 1999). Neither component is implicated when the entire action is a legal nullity at the outset: as *Sokoloff* explained, a decedent captioned in a case "was never a 'party' in the . . . action" to begin with. 109 N.Y.S.3d at 70; c*f. House v. Mitra QSR KNE LLC*, 796 F. App'x 783, 787 (4th Cir. 2019) (if a party is dead at the time an action is commenced, "for legal purposes, he did not exist").

This conclusion is further supported by *Livshits v. Raginskiy*, 735 N.Y.S.2d 579, 580 (App. Div. 2d Dep't 2001). There, the defendant was already deceased when the action was commenced against her. *Id.* Her attorneys argued that the action should be dismissed for lack of personal jurisdiction because she "died prior to the commencement of [the] action and there was never proper service effectuated on her personal representative within the time period allotted by the Statute of Limitations." Appellant's Br., *Livshits*, 2001 WL 34689171 (Sept. 20, 2001). The Supreme Court granted the motion "unless proper service is made upon [defendant's personal representative] [within] 30 days." *Id.* The Second Department vacated that order, reasoning that because the defendant was already deceased when the action was commenced, the Supreme

Court's order granting the motion to dismiss for lack of personal jurisdiction was "a nullity." *Livshits*, 735 N.Y.S.2d at 580. The court also dismissed the action and the appeal for lack of "jurisdiction" (without further specification). *Id.* *Livshits* thus held when the defendant is already dead when the action is commenced, the court lacks jurisdiction even to grant a motion to dismiss for lack of personal jurisdiction. Similarly, the order dismissing the case against Rosemond could not have been for lack of personal jurisdiction.

Likewise, the defective foreclosure action was not resolved via a "final judgment on the merits." Gabriel does not claim it was. A dismissal "does not constitute a 'final judgment upon the merits' precluding application of [Section 205(a)] to a subsequently commenced action unless it actually represents a definitive adjudication of the factual or legal merits of the underlying claim." *Carrick v. Cent. Gen. Hosp.*, 414 N.E.2d 632, 637 (N.Y. 1980). Thus, the New York Court of Appeals has held that Section 205(a) remains available even though the plaintiff was predeceased and an administrator had not yet been appointed. *Id.* at 637–38.[6]

---

[6] The *Carrick* court stated that the lack of an administrator was "in no way related to the merits of the underlying claim." *Id.* at 638. Similarly, *Sokoloff* held that the extension of Section 205(a) remained available even though the lawsuit had been commenced in the name of a deceased plaintiff, because the resulting dismissal for lack of capacity to sue was not a "dismissal on the merits." 109 N.Y.S.3d at 71.

Because the three conditions of Section 205(a) could have been satisfied, a new foreclosure action could have been initiated within six months of the termination of the old lawsuit and still have been timely.  It was thus a true statement of law to say, as Shellpoint did in the December 2018 Letter, that "foreclosure proceedings may continue," "a foreclosure sale may occur," and "[a]ny pending foreclosure action or proceeding that has been suspended may be resumed." December 2018 Letter 3.  Summary judgment therefore must therefore be granted to Shellpoint on Gabriel's Section 1692e claim.[7]

## B.   Gabriel Is Not Entitled to Summary Judgment on Any Claim Under 15 U.S.C. § 1692c

As noted, the Complaint did not invoke Section 1692c of the FDCPA.  Still, in her motion papers, Gabriel also seeks summary judgment based on that provision, which restricts the set of people whom a debt collector may contact about consumer debt.  *See* Pl. Mem. 13.  With exceptions not relevant here,

---

[7] Gabriel's Complaint states that Shellpoint made "affirmative representation[s]" in its "telephone calls and written communications with Ms. Gabriel, by telling Ms. Gabriel that she could be held personally liable."  Compl. ¶ 28.  The Complaint does not, however, allege that the December 2018 Letter specifically fell into that category, and her summary-judgment briefs do not make that argument, either.  In any event, the letter did not say that: it was addressed to "Estate of A Rosemond" — not to Gabriel — presumably because Gabriel's attorney held Gabriel out as the executor of that estate.  The letter did go on to say that Shellpoint could start, or continue to pursue, foreclosure proceedings.  As the above analysis shows, that statement was true.

Section 1692c(b) prohibits a debt collector from "communicat[ing], in connection with the collection of any debt, with any person other than the consumer" or certain third parties not relevant here.  15 U.S.C. § 1692c(b).[8]  For purposes of that section, "consumer" means not only "any natural person obligated or allegedly obligated to pay any debt" (the general definition under the FDCPA), but also "the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator," an expanded definition applicable to Section 1692c specifically.  *Id.* §§ 1692a(3), 1692c(d).

Gabriel argues that Shellpoint violated Section 1692c(b) by sending her the December 2018 Letter discussing Rosemond's debt, even though she was neither the person "obligated or allegedly obligated to pay any debt," *i.e.*, Rosemond, nor his "executor" or "administrator."  Pl. Mem. 13–16.

This claim must be denied because Gabriel failed to plead it in her Complaint.  Moreover, amendment on this basis would be futile because Gabriel is not in the class of people who can sue for the Section 1692c violation she alleges.

---

[8] Those third parties consist of "[the consumer's] attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."  *Id.* § 1692c(b).

1.   Gabriel Did Not Plead a Section 1692c Claim

As noted above, the only provision that Gabriel invokes in her Complaint as a basis for Shellpoint's liability is 15 U.S.C. § 1692e.  *See* Compl. ¶¶ 24-25.  Nowhere does the Complaint mention or cite to, Section 1692c.  This omission is fatal.

Courts "have consistently ruled that it is inappropriate to raise new claims for the first time in submissions at the summary judgment stage." *Bal v. Manhattan Democratic Party*, No. 16-CV-2416, 2018 WL 6528766, at *2 (S.D.N.Y. Dec. 12, 2018), *aff'd,* 808 F. App'x 55 (2d Cir. 2020); *see also Perez v. City of New York*, No. 16-CV-7050, 2020 WL 1272530, at *13 n.8 (S.D.N.Y. Mar. 16, 2020) (collecting cases), *aff'd,* 843 F. App'x 406 (2d Cir. 2021).  "A claim must be set forth in the pleadings, in order to give defendants fair notice of the nature of the plaintiff's claim." *Thomas v. Egan*, 1 F. App'x 52, 54 (2d Cir. 2001).  "Allowing plaintiff to proceed on this new theory of liability would effectively amend the complaint at the summary judgment stage." *Toussaint v. NY Dialysis Servs., Inc.*, 230 F. Supp. 3d 198, 214 (S.D.N.Y. 2017), *aff'd*, 706 F. App'x 44 (2d Cir. 2017).  Gabriel seeks to do that here; accordingly, summary judgment on this new claim must therefore be denied.

2.   Gabriel Would Lack "Statutory Standing" to Pursue a
     Claim Under Section 1692c

Gabriel has not moved for leave to amend the Complaint
to add a Section 1692c claim.  Still, the Second Circuit has
suggested that when a litigant raises a new claim for the first
time in her summary-judgment papers, a district court *may* wish
to "grant plaintiff leave to amend her complaint, incorporating
these new claims."  *Thomas*, 1 F. App'x at 54.  But even if
Gabriel were to request such leave now, nearly four years after
the case was filed, the request would be denied.

A district court may deny leave to amend a complaint
where a proposed amendment would fail to state a claim.  *See
Carvel v. Cuomo*, 357 F. App'x 382, 383–84 (2d Cir. 2009) (where
a "plaintiff has failed to state a claim to relief that is
plausible on its face, . . . the district court did not abuse
its discretion in denying plaintiff leave to amend").  And
Gabriel would fail to state a claim under Section 1692c, because
to make such a claim viable, Gabriel must first show that she is
a party who can bring that claim — what some courts have called
"statutory standing."  *See, e.g.*, *Sibersky v. Goldstein*, 155 F.
App'x 10, 11 (2d Cir. 2005).[9]  Despite the nomenclature, however,

_____

[9] *See also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572
U.S. 118, 128 & n.4 (2014) (the question of "whether [a party] within the
class of plaintiffs whom Congress has authorized to sue under [a given
statute]" is "occasion[ally] referred to . . . as 'statutory standing'");
*Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1117 n.4 (9th Cir.

statutory standing "does not implicate subject-matter jurisdiction, *i.e.,* the court's statutory or constitutional *power* to adjudicate the case." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014). Because only a consumer may assert Section 1692c claims, and because Gabriel is not a "consumer" within the meaning of that statute, Gabriel lacks such standing.

      a.   Only "Consumers" Have Statutory Standing to Sue Under Section 1692c

The FDCPA provides a private right in Section 1692k, which uses the term "person," not "consumer." *See* 15 U.S.C. § 1692k(a) ("Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person . . . ."). "Person" is, of course, broader than "consumer." *See Conboy v. AT&T Corp.*, 84 F. Supp. 2d 492, 505 (S.D.N.Y. 2000) ("The protection of the FDCPA is not limited to the statutory definition of 'consumer' under Section 1692a(3), but is broad enough to encompass 'any person' as that term is used in Section 1692k."), *aff'd,* 241 F.3d 242 (2d Cir. 2001). Nevertheless, the violations at issue here — if they were

---

2014) ("[W]hat the courts have sometimes called 'statutory standing' is perhaps better addressed by asking whether Congress has created by a particular statute a cause of action in which a class of plaintiffs is authorized to sue."), *as amended on denial of reh'g and reh'g en banc* (Oct. 31, 2014).

alleged under Section 1692c — would properly be asserted only by "consumers."

Section 1692k uses the broader "person" because it contemplates a private right of action under multiple provisions.  Some of these are keyed to persons generally, but others permit suit by a narrower category of plaintiffs.  The use of "person" is necessary to encompass, for example, claims under Section 1692d, which prohibits debt collectors from "engag[ing] in conduct the natural consequence of which is to harass, oppress, or abuse any person," regardless of whether that person is a "consumer" under the FDCPA.  *See Barasch v. Est. Info. Servs., LLC*, No. 07-CV-1693, 2009 WL 2900261, at *2 (E.D.N.Y. Sept. 3, 2009) ("Unlike § 1692c, which is limited to communications with consumers (as defined by that section), § 1692d and § 1692e are stated more broadly, and may extend to any person 'harmed' or 'aggrieved' by a prohibited practice.").

The class of persons who can enforce a given section of the FDCPA must be determined by reference to the class identified in and protected by that particular section, which may be more limited.  As the Sixth Circuit has explained, a court errs when it "collapse[s] the entire standing inquiry under the FDCPA into whether a particular plaintiff is a 'consumer.'"  *Montgomery v. Huntington Bank*, 346 F.3d 693, 696 (6th Cir. 2003).  Given the differing statutory text between

different sections of the FDCPA, such an approach would "completely ignor[e] that other sections of the FDCPA are either expressly available, or have been interpreted to be available, to 'any person' aggrieved under the relevant statutory provision." *Id.* Rather, *Montgomery* illustrated the correct analysis by separately considering each of the invoked provisions — Sections 1692c, 1692d, and 1692e — and concluding that although Section 1692c was "limited to consumers," the other sections were not. *Id.* at 696–97.

The Second Circuit "has not specifically ruled as to which, if any, sections of the FDCPA are necessarily limited to consumers." *Sibersky*, 155 F. App'x at 11. However, that court has cited the Sixth Circuit's opinion in *Wright v. Finance Service of Norwalk, Inc.*, 22 F.3d 647 (6th Cir. 1995) (en banc). *See Sibersky*, 155 F. App'x at 11. In *Wright*, the Sixth Circuit held that "only a 'consumer' has standing to sue for violations under 15 U.S.C. § 1692c," which it characterized as "the most restrictive of the FDCPA's provisions." 22 F.3d at 649 n.1. The Seventh Circuit agrees, explaining in *Todd v. Collecto, Inc.* that "[i]n contrast to § 1692d, § 1692c restricts debt collectors' communications with and about consumers and is understood to protect only the consumer-debtors themselves." 731 F.3d 734, 737 (7th Cir. 2013).

Courts in this district have consistently ruled in accordance with *Wright* and *Todd*.  For example, *Bank v. Pentagroup Financial, LLC*, "agree[d] with courts that have found non-consumers lack standing to sue under § 1692c."  No. 08-CV-5293, 2009 WL 1606420, at *4 (E.D.N.Y. June 9, 2009).  The court reasoned that "[t]he section, read as a whole, is clearly intended to protect the rights of the consumer rather than the rights of third parties."  *Id.*; *accord Doyle v. Midland Credit Mgmt., Inc.*, No. 11-CV-5571, 2012 WL 1666397, at *2 (E.D.N.Y. May 11, 2012); *Morant v. Miracle Fin., Inc.*, No. 11-CV-4140, 2012 WL 4174893, at *4 (E.D.N.Y. Sept. 17, 2012) ("Here, Plaintiff does not assert that she was the alleged debtor, and, accordingly, she does not have standing to bring these claims. Therefore, the Court grants Defendant's motion to dismiss these claims."); *Barasch*, 2009 WL 2900261, at *2 ("[Section 1692c] is limited to communications with consumers (as defined by that section) . . . .").

> b.   Gabriel Is Not the "Consumer"

Here, Gabriel sued only in her individual capacity. *See* Compl. ¶¶ 1–2.  She does not allege that she is acting as a representative of Rosemond's estate; on the contrary, the parties agree that the administrators of Rosemond's estate are two non-parties to this action.  *See* Pl. 56.1 ¶ 14 ("On or about October 15, 2018, the Kings County Surrogate's Court issued

Letters of Administration to Tony Rosemond and Sonja Rosemond
for the Estate of Anthony Reid Rosemond.").   Thus, because
Gabriel is neither Rosemond (the consumer) nor his executor or
administrator, she lacks statutory standing to bring this claim.
Thus, Gabriel's motion for summary judgment on the basis of a
Section 1692c theory is denied.

### IV.   Conclusion

For these reasons, Gabriel's motion for summary
judgment is denied, and Shellpoint's cross-motion is granted.
The Clerk of Court is respectfully directed to enter judgment in
favor of Shellpoint and to close this case.

SO ORDERED.


                              /s/ Eric Komitee
                              ERIC KOMITEE
                              United States District Judge


Dated:     March 21, 2023
           Brooklyn, New York